UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

PAMELA A. MANN,

    Plaintiff Pro-se,

v.

APEX FINANCIAL MANAGEMENT, LLC
and

"MARK SMITH", A BILL COLLECTOR, INDIVIDUALLY

    Defendants.

---

CASE NUMBER:

3:06CV1818 RNC

November 10, 2006

JURY TRIAL REQUESTED

# COMPLAINT

INTRODUCTION

1. This is an action for violations under the **Fair Debt Collection Practices Act**, hereinafter "FDCPA", 15 U.S.C. §1692a, *et.seq.*, the **Connecticut Consumer Collection Agency Act** (hereinafter "CCCAA"), 36a C.G.S. §800 and regulations issued thereunder, and the **Connecticut Unfair Trade Practices Act** (hereinafter "CUTPA"), 42 C.G.S. §110a.

JURISDICTION

2. Jurisdiction in this case is founded upon 15 U.S.C. 1692k which grants the United States District Courts jurisdiction to hear this action without regard to the amount in controversy. Jurisdiction is also founded upon the plaintiff's venue in this District, and the fact that Apex Financial Management, LLC is a licensed collection agency here and does business here.

## PARTIES IN THIS ACTION

3. The Plaintiff is Pamela A. Mann (hereinafter "plaintiff"), a natural person residing in West Hartford, Connecticut.

4. Upon information and belief, Apex Financial Management LLC (hereinafter "Apex"), is a corporation doing business at P.O. Box 2219, Northbrook, Illinois, their corporate headquarters, and is a debt collection agency.

5. Apex has a second business location at 8160 S. Hardy Drive, Suite 110, Tempe, Arizona.

6. Apex is registered by the Connecticut Secretary of State's Office (hereinafter "CT SoS") as a foreign corporation

7. Defendant Apex is also licensed by the State of Connecticut as a consumer collection agency.

8. The debt collector hereinabove is a debt collector as defined by the FDCPA, 15 U.S.C. §1692a(6), and the Connecticut Collection Agency Act (hereinafter "CCAA"). C.G.S. §36a-800, *et. seq.*

9. Upon information and belief, the second defendant is John Doe #1, a.k.a "Mark Smith" a bill collector at Apex.

10. "Mark Smith" may be an alias or "desk name".

11. The defendants, both collectively and separately, are debt collectors as defined by the FDCPA, 15 U.S.C. §1692a(6), and the CCAA, 36a C.G.S. §36a-800.

12. Although the plaintiff may not be liable to the defendants or any company or corporation for which the defendants collect, the plaintiff is a "consumer" as defined in 15 U.S.C.§1692a(3).

## FACTUAL ALLEGATIONS

13. The plaintiff hereby repeats and realleges and reincorporates by reference the foregoing paragraphs.

14. By information and belief, a collection account for a charged off Direct Merchants Bank (hereinafter "DMB") credit card was sold or assigned by the original owner and/or one of its assignees to Hilco Receivables, LLC (hereinafter "Hilco").

15. By information and belief, this account was then assigned by Hilco to Apex for collection in early November, 2005.

## COUNT NUMBER ONE

16. The plaintiff hereby repeats and realleges and reincorporates by reference the foregoing paragraphs.

17. The plaintiff received a collection letter from Apex's IL office on or around November 18, 2005.

18. This letter, dated November 11, 2005, demanded an unsubstantiated balance of $6,834.46 due to Hilco as assignee for DMB.

## COUNT NUMBER TWO

19. The plaintiff hereby repeats and realleges and reincorporates by reference the foregoing paragraphs.

20. On November 15, 2005, the plaintiff received a telephone call at her place of employment, the CT State Library from "Mark Smith", a collector at Apex.

21. The phone call informed the plaintiff that Apex had a collection for a DMB account which charged off about July 31, 2004.

22. The plaintiff informed the defendant "Mark Smith" that she recalled no such account and needed proof in writing that the collection account existed.

23. The defendant "Mark Smith" ignored the request and repeatedly pressed for payment.

24. The plaintiff attempted to make it clear she wanted validation of the alleged debt as required under §1692(g) of the FDCPA.

25. After several fruitless exchanges, the plaintiff terminated the call.

26. The defendant "Mark Smith", shortly thereafter called the plaintiff's home number—which he claimed he did not have on record—to leave a message.

27. This message stated that an initial communication (validation) letter would be mailed to the plaintiff; it was accompanied by an abusive attempt to collect the alleged balance due.

## COUNT NUMBER THREE

28. The plaintiff hereby repeats, realleges and reincoporates by reference the foregoing paragraphs.

29. On November 22, 2005, the defendant "Mark Smith" once again called the plaintiff at her workplace despite the request not to call at the workplace.

30. The plaintiff requested that the defendant "Mark Smith" direct all calls to the home phone number and terminated the call soon after.

31. The defendant then left a call a few minutes later alleging that he had left several other messages and left this message: "I need to hear from you today by 5 p.m. or I will be moving forward to secure this matter.".

## COUNT NUMBER FOUR

32. The plaintiff hereby repeats, realleges, and reincorporates by reference the foregoing paragraphs.

33. The very next day, November 23, 2005, at 8:22 p.m., the defendant "Mark Smith" left a voice mail message.

34. The defendant "Mark Smith" informed the plaintiff that "an investigation" had started.

35. He claimed that paperwork had been submitted to Louise Carey, Personnel Officer at the CT State Library, where the plaintiff works.

## COUNT NUMBER FIVE

36. The plaintiff hereby repeats, realleges and reincorporates by reference the foregoing paragraphs.

37. "Mark Smith" left two more threatening voice mail messages at 11:16 a.m., November 25, 2005, and November 28, 2005 (5:42 p.m.) also calling for "resolution" of the account.

## COUNT NUMBER SIX

38. The plaintiff hereby repeats, realleges and reincorporates by reference the foregoing paragraphs.

39. A letter requesting validation of the alleged DMB account was mailed CMRRR (certified mail return receipt requested) on November 22, 2006 to Apex.

40. The letters were signed for by an employee of Apex on or about November 28, 2005.

## COUNT NUMBER SEVEN

41. The plaintiff hereby repeats, realleges, and reincorporates by reference the foregoing paragraphs.

42. In November, 2005, the plaintiff submitted a complaint asserting violations of the CCAA and CUTPA to the CT Department of Consumer Protection, the CT Attorney General's Office, and the CT Department of Banking, requesting an investigation of Apex.

43. The Commissioner of the Department of Consumer Protection, Edwin Rodriguez, then forwarded the complaint to the Attorney General of the State of Illinois, who then began an investigation of Apex.

44. The complaints were never resolved due to Apex's non-cooperation, even though repeated requests were made to Apex to respond.

## COUNT NUMBER EIGHT

45. The plaintiff hereby repeats, realleges, and reincorporates by reference the foregoing paragraphs.

46. Despite never having validated/verified the debt as required under 15 U.S.C. §1692(g), the defendant continued to collect.

47. Another collection letter dated January 20, 2006 from Apex was received on January 25, 2006.

48. This letter offered a settlement of 70% of the original demand amount or that the plaintiff contact the defendant Apex to make payment arrangements for the alleged—and unvalidated/unverified--debt.

## FIRST CLAIM FOR RELIEF

49. The plaintiff hereby repeats, realleges, and reincorporates by reference the foregoing paragraphs.

50. Defendant Apex, in violation of 15 U.S.C. §1692(g), continued collection activities.

51. Defendant Apex, in repeated violation of 15 U.S.C. §1692e(2), by claiming that their client Hilco was due the sum of $6,834.46, which falsely represented the amount and character of the debt.

52. By claiming that DMB was the client during phone calls, and not Hilco, who was the then alleged assignee/purchaser of the alleged debt, the defendant "Mark Smith" violated 15 U.S.C. §1692e(2)(A), and 15 U.S.C. §1692f generally.

53. Defendant Mark Smith, agent of Apex, by repeatedly calling the plaintiff at inconvenient times or places, even when informed that such communications were inconvenient, violated 15 U.S.C. §16921692c(a) generally; 15 U.S.C. §1692d(5) and 15 U.S.C. §1692d, generally; 15 U.S.C. §1692f, generally.

54. The Apex defendants repeatedly violated 15 U.S.C. §1692f(1) in attempting to collect sums not founded on any lawful instrument of indebtedness.

6

55. The defendant "Mark Smith", by contacting the plaintiff at her place of employment after having been informed that such communications were inconvenient and not permitted by her employer violated 15 U.S.C. §1692c(a)(1) and 15 U.S.C. §1692c(a)(3).

56. By claiming that a letter had been sent to the plaintiff as per the voice mail message of 11/15/2005 in validation of the alleged debt, but no such letter ever having been mailed to the plaintiff, defendant Apex and "Mark Smith" violated 15 U.S.C. §1692(b).

59. By claiming that DMB was the client and not Hilco, defendants Apex and "Mark Smith" repeatedly engaged in deception in order to collect in violation of 15 U.S.C §1692(g).

60. By threatening that Apex and "Mark Smith", as expressed in the voice mail message of 11/22/2005, would be "moving forward to secure this matter", with the implication of possible actions, including legal actions, which would not be taken, violated 15 U.S.C. §1692d; 15 U.S.C. §1692e(5) and 15 U.S.C. §1692f(6)

61. By claiming in the voice mail message of 11/23/1005 that "an investigation" had begun that involved Louise Carey, Personnel Officer at the plaintiff's place of employment and that the plaintiff needed to contact Apex to discuss payment arrangements, yet no such investigation was legal or even had occurred at all, "Mark Smith" and Apex violated 15 U.S.C. §1692c(a)(1); 15 U.S.C. §1692c(a)(3); 15 U.S.C §1692(b); 15 U.S.C. §1692d(6); 15 U.S.C §1692e(4); 15 U.S.C §1692e(5); and15 U.S.C §1692f(6) generally.

62. By demanding settlement of the alleged DMB account in the letter of 1/20/2006 without ever having validated as requested under the FDCPA, 15 U.S.C. §1692(g) by letter dated 11/25/2005, defendant Apex violated that section and 15 U.S.C. §1692e(2)(A).

SECOND CLAIM FOR RELIEF

63. The plaintiff hereby repeats, realleges and reincorporates by reference the foregoing paragraphs.

64. Within three years prior to the date of this action defendants have repeatedly and maliciously engaged in acts and practices as to plaintiff in violation of the Consumer Collection Agency Act, 36a C.G.S. §36a-800, *et. seq.* and the Connecticut Unfair Trade Practices Act, 42 C.G.S. §42-110a, *et.seq.*.

65. By knowingly accepting and/or making claims which had collection fees or other fees and or excessive interest which had not been agreed to by the plaintiff and/or in excess of those allowed by law, the defendants violated 36a C.G.S. §805(13).

66. By implying that possible legal actions such as lawsuit and/or payroll garnishment were imminent when such actions could not or would not be taken, defendants engaged in deceptive acts in the attempt to collect a debt in violation 36a C.G.S. §806(a); 36a C.G.S. §806(b); 42 C.G.S. §110(a) and 42 C.G.S. §110(b).

67. By repeatedly failing to meaningfully disclose their identity and/or that of their agent, the defendants violated 36a C.G.S. §806(a); 36a C.G.S. §806(b); 42 C.G.S. §110(a) and 42 C.G.S. §110(b).

68. Defendants have thereby repeatedly and maliciously committed the unfair or deceptive acts or practices within the meaning of the Connecticut Unfair trade Practices Act, 42 C.G.S. §42-110(a), *et. seq.*.

69. As a result of the actions of the defendants and/or their agents, the plaintiff has suffered emotional distress, has lost enjoyment in her normal life and activities, and has been ill frequently, causing her to miss work repeatedly.

WHEREFORE, plaintiff respectfully requests this Court to:

1. Render declaratory judgment that defendants' conduct violated the FDCPA, the CCCAA, and the CUTPA, and to grant declaratory and injunctive relief for the defendants' repeated violations of the FDCPA and/or the Connecticut Collection Agency Act and/or the Connecticut Unfair Trade Practices Act.

2. Award plaintiff such damages as are permitted by law, both compensatory and punitive, including $1,000 statutory damages for each communication.

3. Award the plaintiff costs of suit, and, if so allowed by the Court, a reasonable attorney's fee.

4. Award declaratory and injunctive relief, and such other and further relief as law or equity may provide.

THE PLAINTIFF

By: *Pamela A. Mann*
Pamela A. Mann, Plaintiff
Pro-se
18 Abbotsford Avenue
West Hartford, CT  06110-2202
Tel. No. (860)953-8681
pamela_mann@sbcglobal.net